United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN ADDITION DRYWALL, INC., et al.,<br><br>Defendants. | Case No. 16-cv-02427-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 61 |

Plaintiffs in this case are as follows:

(1) District Council 16 Northern California Health & Welfare Trust Fund and its Trustees;

(2) Bay Area Painters and Tapers Pension Trust Fund and its Trustees;

(3) District Council 16 Northern California Journeyman and Apprentice Training Trust Fund and its Trustees; and

(4) District Council 16 of the International Union of Painters and Allied Trades ("District Council 16").

They have filed an ERISA action against the following defendants for, *inter alia*, failure to comply with an audit and failure to pay contributions to the above Trust Funds, *see* Compl. ¶¶ 15-16:

(1) Western Addition Drywall, Inc. ("WAD"); and

(2) James Bealum.

Currently pending before the Court is Plaintiffs' motion for summary judgment or, in the alternative, summary adjudication. The motion seeks relief against WAD only, and not Mr. Bealum. It appears that Mr. Bealum died in 2016. *See* Stafford Decl. ¶ 6 (testifying that Plaintiffs were informed by defense counsel that he had passed away). WAD failed to file a written

opposition to Plaintiffs' motion. In addition, WAD failed to make an appearance at the hearing on the motion. Having considered the papers submitted, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** Plaintiffs' motion.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

A.  Status of WAD

As an initial matter, the Court takes into consideration that, at the time Plaintiffs filed suit against WAD in May 2016, it was a suspended corporation. *See* Compl. ¶ 3. On September 12, 2018, the day before Plaintiffs filed the pending motion, they checked the status of WAD on the California Secretary of State website. WAD was still listed as a suspended corporation. *See* Minser Decl. & Ex. D. There is no indication that that status has changed since that date.

That being the case, WAD cannot defend itself in this action (and, in fact, has not defended itself, as noted above, by failing to file a written opposition). As the Ninth Circuit has explained:

> "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." F.R.Civ.P. 17(b). *See Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 125-26 (1937). Wawona is a California corporation, which mandates the application of California law. The relevant California law, Cal. Rev. and Tax Code § 23301, provides that the rights, powers and privileges of a corporation may be suspended for nonpayment of taxes. It is well-settled that a delinquent corporation may not bring suit and may not defend a legal action. *Reed v. Norman*, 48 Cal. 2d 338, 343 (1957). Nor may the delinquent corporation appeal an adverse ruling. *Boyle v. Lakeview Creamery Co.*, 9 Cal. 2d 16, 19 (1937). However, once the corporate powers are reinstated, the corporation may defend an action. *Traub Co. v. Coffee Break Service, Inc.*, 66 Cal. 2d 368, 371 (1967).

*United States v. 2.61 Acres of Land*, 791 F.2d 666, 668 (9th Cir. 1985).

Because WAD cannot defend itself as a suspended corporation, the Court focuses on the evidence provided by Plaintiffs.

B.  Evidence Submitted by Plaintiffs

1.  2011 Master Agreement

On November 18, 2011, WAD signed the 2011 Master Agreement with District Council 16. *See* Christophersen Decl., Ex. A (2011 Master Agreement). The 2011 Master Agreement remained in force until June 30, 2014, and thereafter renewed for one-year periods absent notice

by a party. *See* Christophersen Decl., Ex. A (2011 Master Agreement, art. 15).

Article 13 of the Master Agreement concerns payments to trust funds.

- Section 1 of Article 13 provides as follows: "This Agreement requires **contributions** to be made on behalf of all employees of the Employer performing work covered under the terms of this Agreement in accordance with Wage Schedule A to [certain] Trust Funds," including the three Trust Funds at issue in the instant case. Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 1) (emphasis added).

- Section 2 of Article 13 provides that the **Trust Agreements** for the Trust Funds are "incorporated herein by reference and made a part of this Agreement," including any amendments to the Trust Agreements adopted after the date of the Master Agreement. Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 2). *See, e.g.*, Christophersen Decl., Ex. C (Trust Agreement for District Council 16 Northern California Health and Welfare Trust Fund) (in § III.A, providing for "Employer contributions required by a Contribution Agreement" and, in § III.D, providing that "[e]ach Employer shall maintain such time records, checks, . . . or other such records relating to employment for which contributions are payable hereunder, sufficient (1) to determine whether it has satisfied all obligations to the Trust").

- Section 4 of Article 13 provides that "contributions based on hours worked in a particular month shall be payable under this Agreement on or before the fifteenth (15th) day of the following month (the 'due date') and will be deemed **delinquent** if not received by the end of the month, at which time liquidated damages shall be incurred **and** interest assessed as of the first day of the next month." Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 4(b)) (emphasis added). "The amount of **liquidated damages** shall be the greater of twenty percent (20% of the delinquent contributions . . . or one hundred fifty dollars ($150.00) per month, or the interest accrued until those contributions . . . are paid, whichever is

3

greater."[1] Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 4(c)) (emphasis added). "**Interest** shall be assessed . . . at such rate as the Trustees of the Trust Funds may determine." Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 4(c)) (emphasis added). The Trust Agreement for District Council 16 Northern California Health and Welfare Trust Fund – which is representative of the other Trust Agreements, *see* Christophersen Decl. ¶ 8 – provides that interest is "at the rates prescribed from time to time pursuant to the Underpayment Rate of Internal Revenue Code Section 6621, or such other reasonable rates as the Joint Board may from time to time establish." Christophersen Decl., Ex. C (Trust Agreement for District Council 16 Northern California Health and Welfare Trust Fund) (§ III.C.3). It appears that the Trustees have now "determined that interest is assessed at 5% of the delinquent contributions, from the date an employer becomes delinquent until the contributions are paid." Christophersen Decl. ¶ 11; *see also* Stafford Decl. ¶ 13 (stating the same).

- Section 4 of Article 13 also provides that "**attorney's fees and . . . other expenses** incurred in connection with the delinquency" shall be assessed. Christophersen Decl., Ex. 1 (2011 Master Agreement, art. 13, § 4(c)) (emphasis added); *see also* Christophersen Decl., Ex. C (Trust Agreement for District Council 16 Northern California Health and Welfare Trust Fund) (in § III.E, providing that a "Trust may institute legal proceedings to compel an audit, to collect delinquent Employer contributions, liquidated damages, interest, attorneys' fees and other costs of collection, including collection agency fees and audit fees"; that "[t]he Employer shall reimburse the Trust . . . for all reasonable attorneys' fees, audit fees, court costs, collection agency fees, and all other reasonable expenses or contributions of whatever nature incurred in connection with such suit or claim, including any and

---

[1] Liquidated damages are smaller if delinquencies are paid prior to the filing of a lawsuit. *See* Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 4(c)).

4

all appellate proceedings therein"; and that "[t]he Employer shall reimburse the Trust for all reasonable attorneys' fees and costs incurred in legal action brought to compel an audit of Employer's records, notwithstanding that no underpayments were determined due on audit").

- Section 4 of Article 13 further provides that the Trust Funds "shall be allowed to **inspect** the payroll records of any Employer . . . , with reasonable written notice to ascertain if the provisions of this Agreement are being complied with." Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 4(h)) (emphasis added).

- Similarly, § 5 of the Article 13 provides that The Trust Funds may require an Employer "to submit . . . any information relevant to the administration of the Trust. Upon notice in writing from the Trust Funds, an Employer must permit an accountant, or agent of an accountant, of the Board of Trustees to enter upon the premises of such Employer . . . during business hours to **examine** and copy records." Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 5) (emphasis added).

2. 2015 Master Agreement

On October 16 2015, WAD entered into the 2015 Master Agreement with District Council 16. *See* Christophersen Decl., Ex. B (2015 Master Agreement). The 2015 Master Agreement remained in force until June 30, 2018, and thereafter renewed for one-year periods absent notice by a party. *See* Christophersen Decl., Ex. B (2015 Master Agreement, art. 15).

The 2015 Master Agreement contains the same basic terms discussed above in reference to the 2011 Master Agreement.

3. Violations of Master Agreements/Trust Agreements

Plaintiffs have provided evidence that WAD has violated the Master Agreements and/or Trust Agreements. The specific violations are itemized below.

WAD "has failed to comply with an audit of its records. The audit period is March 1, 2013 through the date of the audit." Christophersen Decl. ¶ 13. (The audit request was made on

December 23, 2015. *See* Nicolette Decl. ¶ 4). Although Plaintiffs obtained some payroll documentation as part of settlement discussions, Plaintiffs have not obtained all relevant records. *See, e.g.*, Minser Decl. ¶¶ 16-17 (testifying that, in May 2018, "I received some payroll documentation . . . covering a portion of the audit period" but "Plaintiffs have received no other information necessary to complete the audit"); Nicolette Decl. ¶¶ 7-8 (testifying that, "[i]n May 2018, I received from payroll records' but "the records do not fully cover the Testing Period" – "payroll records are missing for the following time periods:" March-December 2013, January-July 2014, and June 2016-present).

WAD paid contributions for July-November 2015 but the payments were late and so liquidated damages ($3,750) and interest ($1,850.32) are due. *See* Christophersen Decl. ¶ 18.

For December 2015, WAD self-reported that $32,286.40 were due in contributions but WAD did not make the payment on time. Subsequently, WAD partially paid, leaving a balance of $16,129.30 still due. *See* Christophersen Decl. ¶¶ 14-15. Liquidated damages are due for the delinquency ($6,457.28). Interest is also assessed ($207.74 + $2,002.26 = $2,210).

WAD failed to report and pay contributions for May-July 2016 and July 2017-present. *See* Christophersen Decl. ¶ 17.

Based on WAD's failure to comply with the agreements, Plaintiffs' counsel has incurred costs totaling $1,171.76. *See* Stafford Decl. ¶ 12. In addition, Plaintiffs' counsel has incurred fees totaling $30,101.50 for work performed from January 11, 2016, through September 7, 2018. *See* Stafford Decl. ¶ 10.

- Ms. Stafford. Hourly rate of $220-$235; 10.6 hours. $2,362 total. *See* Stafford Decl. ¶ 10(a).
- Ms. Russell. Hourly rate of $215-230; 26.2 hours. $5,747 total. *See* Stafford Decl. ¶ 10(b).
- Mr. Froehle. Hourly rate of $215; 7.2 hours. $1,548 total. *See* Stafford Decl. ¶ 10(c).
- Mr. Minser. Hourly rate of $215-230; 42.5 hours. $9,773.50 total. *See* Stafford Decl. ¶ 10(d).

6

- Ms. Cotterill (paralegal). Hourly rate of $125-135; 81.6 hours. $10,671 total. *See* Stafford Decl. ¶ 10(e).
- **TOTAL = $30,101.50.** *See* Stafford Decl. ¶ 11. This sum represents a total of 168.1 hours (including paralegal hours).

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

B. Audit

In their motion for summary judgment, Plaintiffs assert that they have a right to audit WAD's records and that WAD has failed to comply with their audit request.

Plaintiffs have adequately established that they have a right to audit WAD's records. That right comes from the Master Agreements which specifically allow for an inspection.

- The Master Agreements provide that the Trust Funds "shall be allowed to **inspect** the payroll records of any Employer . . . , with reasonable written notice to ascertain if the provisions of this Agreement are being complied with." Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 4(h)) (emphasis added).
- The Master Agreements also provide that The Trust Funds may require an Employer "to submit . . . any information relevant to the administration of the Trust. Upon notice in writing from the Trust Funds, an Employer must permit an

7

accountant, or agent of an accountant, of the Board of Trustees to enter upon the premises of such Employer . . . during business hours to **examine** and copy records." Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 5) (emphasis added).

*Cf. Bd. of Trs. v. Charles B. Harding Constr., Inc.*, No. C-14-1140 EMC, 2014 U.S. Dist. LEXIS 175680 , at *15-16 (N.D. Cal. Dec. 18, 2014) ("'Where a Fund's trust documents, to which an employer has bound itself, specifically provide that Fund trustees can examine any of the employer's records, an employer must comply with such agreed upon obligations.'") (citing, *inter alia*, *Central States, Southeast & Southwest Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985)).

In addition, there is an independent source for the right to inspect that comes from 29 U.S.C. § 1132. Subsection (g) provides that, "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145 (delinquent contributions)] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). *See International Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 31 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate [under 29 U.S.C. § 1132(g)(2)(E)]. This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records.").

Plaintiffs have established not only the right to inspect but also that WAD "has failed to comply with an audit of its records. The audit period is March 1, 2013 through the date of the audit." Christophersen Decl. ¶ 13. (The audit request was made on December 23, 2015. *See* Nicolette Decl. ¶ 4). Plaintiffs have admitted that they obtained some payroll documentation as part of settlement discussions, but they have provided evidence that they have not obtained all relevant records. *See, e.g.*, Minser Decl. ¶¶ 16-17 (testifying that, in May 2018, "I received some payroll documentation . . . covering a portion of the audit period" but "Plaintiffs have received no other information necessary to complete the audit"); Nicolette Decl. ¶¶ 7-8 (testifying that, "[i]n

May 2018, I received from payroll records' but "the records do not fully cover the Testing Period" – "payroll records are missing for the following time periods:" March-December 2013, January-July 2014, and June 2016-present).

Accordingly, Plaintiffs are summary judgment on the audit.

C. Contributions, Liquidated Damages, and Interest

Plaintiffs assert that they have the right to contributions, and the right to liquidated damages and/or interest if there are delinquent contributions (unpaid or late), and that WAD failed to pay all contributions owed which means that contributions are due, as well as liquidated damages and/or interest.

Plaintiffs have adequately established that they have the right to contributions. Both the Master Agreements and Trust Agreements require employers to make contributions.

- The Master Agreements provide as follows: "This Agreement requires **contributions** to be made on behalf of all employees of the Employer performing work covered under the terms of this Agreement in accordance with Wage Schedule A to [certain] Trust Funds," including the three Trust Funds at issue in the instant case. Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 1) (emphasis added).

- The Master Agreements also provide that the **Trust Agreements** for the Trust Funds are "incorporated herein by reference and made a part of this Agreement," including any amendments to the Trust Agreements adopted after the date of the Master Agreement. Christophersen Decl., Ex. A (2011 Master Agreement, art. 13, § 2). *See, e.g.*, Christophersen Decl., Ex. C (Trust Agreement for District Council 16 Northern California Health and Welfare Trust Fund) (in § III.A, providing for "Employer contributions required by a Contribution Agreement" and, in § III.D, providing that "[e]ach Employer shall maintain such time records, checks, . . . or other such records relating to employment for which contributions are payable hereunder, sufficient (1) to determine whether it has satisfied all obligations to the Trust").

9

And under 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

Plaintiffs have also established the right to liquidated damages and/or interest if there are delinquent contributions. Such is specified by the Master Agreements and/or Trust Agreements. Also, under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145 claim not only the unpaid contributions but also (1) interest on the unpaid contributions and (2) an amount equal to the greater of (a) the interest on the unpaid contributions, or (b) liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions). *See* 29 U.S.C. § 1132(g)(2).

Finally, Plaintiffs have established the failure to pay contributions, which means contributions are owed as well as liquidated damages and/or interest.

- WAID paid contributions for July-November 2015 but the payments were late and so liquidated damages ($3,750) and interest ($1,850.32) are due. *See* Christophersen Decl. ¶ 18.
- For December 2015, WAD self-reported that $32,286.40 were due in contributions but WAD did not make the payment on time. Subsequently, WAD partially paid, leaving a balance of $16,129.30 still due. *See* Christophersen Decl. ¶¶ 14-15. Liquidated damages are due for the delinquency ($6,457.28). Interest is also assessed ($207.74 + $2,002.26 = $2,210).
- WAD failed to report and pay contributions for May-July 2016 and July 2017-present. *See* Christophersen Decl. ¶ 17.

Because there is nothing to indicate that the numbers supplied by Plaintiffs are incorrect, Plaintiffs are awarded the sums above on summary judgment, which total $30,396.90. *See also* Mot. at 9.

D.  Attorney's Fees and Costs

Finally, Plaintiffs claim the right to attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2), which provides that, "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145 (delinquent contributions)] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The award of attorney's fees and costs is mandatory, although this is somewhat tempered by the qualification that such be "reasonable." *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983) (noting that § 1132(g)(2), "makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions").

In the instant case, Plaintiffs' counsel represents that it has incurred costs totaling $1,171.76. *See* Stafford Decl. ¶ 12. Also, it has incurred fees totaling $30,101.50 for work performed from January 11, 2016, through September 7, 2018. *See* Stafford Decl. ¶ 10.

- Ms. Stafford. Hourly rate of $220-$235; 10.6 hours. $2,362 total. *See* Stafford Decl. ¶ 10(a).
- Ms. Russell. Hourly rate of $215-230; 26.2 hours. $5,747 total. *See* Stafford Decl. ¶ 10(b).
- Mr. Froehle. Hourly rate of $215; 7.2 hours. $1,548 total. *See* Stafford Decl. ¶ 10(c).
- Mr. Minser. Hourly rate of $215-230; 42.5 hours. $9,773.50 total. *See* Stafford Decl. ¶ 10(d).
- Ms. Cotterill (paralegal). Hourly rate of $125-135; 81.6 hours. $10,671 total. *See* Stafford Decl. ¶ 10(e).
- **TOTAL = $30,101.50.** *See* Stafford Decl. ¶ 11. This sum represents a total of 168.1 hours (including paralegal hours).

The costs are reasonable and therefore are awarded. *See* Stafford Decl. ¶ 12 (representing that the costs consist of "the Complaint filing fee, messenger services to the Court for filing of documents and the service of process on Defendant").

As for fees, while the hourly rates are reasonable, the Court has some concern about the number of hours (*i.e.*, 168.1 hours). Although the lawsuit was filed back in May 2016, no real litigation has taken place in the case, except for settlement discussions. The Court therefore applies a 10% "haircut" and reduces the fee request to $27,091.35. *Cf.* Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that "the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation").

E. Retention of Jurisdiction

In their proposed order, Plaintiffs ask the Court to retain jurisdiction. This is reasonable particularly because, after the audit is conducted, Plaintiffs will likely want an amended judgment. *See Harding*, 2014 U.S. Dist. LEXIS 175680, at *16-17 (noting that "[c]ourts of this district have found such action to be appropriate in ERISA cases"; thus, retaining jurisdiction "with regard to any contributions and/or damages determined to be owed to the Trust Funds after the latest audit has been completed and Harding Construction's monthly contribution reports provided").

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment and orders the following relief.

(1) Plaintiffs are awarded $30,396.90, which represents unpaid contributions ($16,129.30), as well as liquidated damages and interest.

(2) For the unpaid contributions above ($16,129.30), interest shall continue to accrue at a rate of 5% per annum from September 11, 2018, until paid (in accordance with the Master and Trust Agreements).

(3) Plaintiffs are awarded $1,171.76 in costs.

(4) Plaintiffs are awarded $27,091.35 in attorney's fees.

(5) Within sixty (60) days of the date of this order, WAD shall provide Plaintiffs with all of the following documents relative to the audit period of March 1, 2013 through the present:

- Payroll registers or other documents which show wages paid and hours worked by

week;
- California Quarterly Wage and Withholding Report (Form DE 6/DE 9C);
- Monthly transmittals to the Trust showing the names reported for benefits;
- Monthly hours summaries or other document used by you to facilitate accurate reporting;
- Detailed documentation of the Job classifications of employees NOT reported to the Trust;
- Cash disbursement Journals (check registers);
- 1099's;
- Dispatch slips;
- Monthly transmittals to other Trust Funds;
- Time cards for the most recent full quarter of the current year;
- Signed collective bargaining agreement, subscriber's agreement and project labor agreement for the entire testing period, covering the employees who are reported to the Trust;
- Copies of completed Travel Time Calculation sheets (when travel is reported).

Within seventy-five (75) days of the date of this order, Plaintiffs shall either move for an amended judgment based on the results of the audit or shall file a statement stating that no additional relief is sought. If Plaintiffs file a motion, the Court shall resolve that motion and thereafter direct the Clerk of the Court to enter a final judgment.

This order disposes of Docket No. 61.

**IT IS SO ORDERED**.

Dated: October 26, 2018

_____
EDWARD M. CHEN
United States District Judge

13